Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

Donald J. Enright (to be admitted *pro hac vice*)
Email: denright@zlk.com
**LEVI & KORSINSKY, LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567

*Attorneys for Plaintiff David Feuerborn*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FEUERBORN, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>YUME, INC., PAUL PORRINI, MITCHELL HABIB, ADRIEL LARES, ELIAS NADER, CHRISTOPHER PAISLEY, ERIC SINGER, JOHN MUTCH, BRIAN KELLEY, STEVE DOMENIK, RHYTHMONE, PLC, and REDWOOD MERGER SUB I, INC.,<br><br>                Defendants. | Case No. 3:18-cv-00197<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff David Feuerborn ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE AND SUMMARY OF THE ACTION

1.    Plaintiff brings this action as a public stockholder of YuMe, Inc. ("YuMe" or the "Company") against the members of YuMe's Board of Directors (the "Board" or the "Individual Defendants") and YuMe for their violations of Section 14(d)(4) and Rule 14D-9 promulgated

1  thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and 20(a), arising out of
2  their attempt to sell the Company to RhythmOne, PLC ("RhythmOne").

3      2.      On September 5, 2017, the Company announced that it had entered into a definitive
4  agreement (the "Merger Agreement") by which RhythmOne would acquire YuMe through an
5  exchange offer, with each share of YuMe common stock exchangeable for (i) $1.70 in cash; and
6  (ii) 7.325 shares of RhythmOne (the "Exchange Offer"), with an implied value of $5.20 per share of
7  YuMe common stock (the "Proposed Transaction").  The Proposed Transaction has an equity value
8  of approximately $185 million.

9      3.      On December 26, 2017, RhythmOne and the Company filed a materially misleading
10  and incomplete Form F-4 Registration Statement (the "Registration Statement") with the SEC.  On
11  January 4, 2018, the Company filed a Schedule 14D-9 (the "Recommendation Statement") in
12  connection with the Exchange Offer.  The Recommendation Statement solicits the approval of the
13  the Proposed Transaction to YuMe stockholders through a materially misleading and incomplete
14  recitation of the financial projections of RhythmOne, and the financial analysis performed by the
15  Company's financial advisor, Deutsche Bank Securities, Inc. ("Deutsche Bank").  The Exchange
16  Offer commenced on January 4, 2018, and expires on February 1, 2018 at one minute following
17  11:59 P.M. Pacific time.

18      4.      Without additional information, the Recommendation Statement is materially
19  misleading in violation of federal securities laws.

20      5.      By unanimously approving the Proposed Transaction and authorizing the issuance of
21  the Recommendation Statement, the Individual Defendants (defined below) participated in the
22  solicitation even though they knew, or should have known, that the Recommendation Statement was
23  materially false and/or misleading.   The Recommendation Statement is an essential link in
24  accomplishing, and receiving stockholder approval for, the Proposed Transaction.

25      6.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants
26  (collectively identified below) from completing the Exchange Offer unless and until the material
27  information discussed below is disclosed to the holders of YuMe common stock or, in the event the
28  Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations

of the Exchange Act.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331-32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(d)(4), and 20(a) of the Exchange Act of 1934 ("Exchange Act"), and Rule 14d-9 promulgated thereunder.

8.      The Court has personal jurisdiction over all of the defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) YuMe maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

10.     Plaintiff is, and has been at all times relevant hereto, a stockholder of YuMe.

11.     Defendant YuMe is a Delaware corporation with its headquarters located at 1204 Middlefield Road, Redwood City, California, 94063.  YuMe common stock trades on the New York Stock Exchange under the ticker symbol "YUME."

12.     Defendant Mitchell Habib ("Habib") has served as a director of the Company since June 2013.

13.     Defendant Adriel Lares ("Lares") has served as a director since June 2013.

14.     Defendant Elias Nader ("Nader") has served as a director of the Company since

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

May 2016.

15.     Defendant Christopher Paisley ("Paisley") has served as a director of the Company since November 2012.

16.     Defendant Eric Singer ("Singer") has served as a director and the Chairman of the Board since May 2016.

17.     Defendant John Mutch ("Mutch") has served as a director of the Company since 2017.

18.     Defendant Brian Kelley ("Kelley") has served as a director of the Company since 2017

19.     Defendant Steve Domenik ("Domenik") has served as a director of the Company since 2017.

20.     Defendant Paul Porrini ("Porrini") has served as President and Chief Executive Officer of the Company since November 2016.

21.     Defendants Habib, Lares, Nader, Paisley, Singer, Mutch, Kelley, Domenik, and Porrini are collectively referred to herein as the "Individual Defendants," and the Individual Defendants are sometimes collectively referred to herein as the "Board."

22.     Defendant RhythmOne is a public limited company incorporated and registered in England and Wales.  RhythmOne is a digital media company that connects online audiences with brands through premium content across devices. RhythmOne is named as a defendant for the purpose of obtaining the relief sought by Plaintiff.

23.     Defendant Redwood Merger Sub I, Inc. ("Merger Sub") is a Delaware corporation and wholly-owned subsidiary of RhythmOne, formed for the purpose of effecting the Proposed Transaction.  Merger Sub is named as a defendant for the purpose of obtaining the relief sought by Plaintiff.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

24.     YuMe is an independent provider of multiscreen video advertising technology, connecting brand advertisers, digital media property owners, and consumers of video content across

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

a range of Internet-connected devices.  The Company's software is used by digital media properties to monetize professionally-produced content and applications.

25.     In a press release dated September 5, 2017, the Company announced that it had entered into the Merger Agreement with RhythmOne, pursuant to which the Company will be acquired by RhythmOne and stockholders will receive $1.70 in cash and 7.325 shares of RhythmOne common stock for each share of YuMe common stock.   This represents a total equity value of approximately $185 million.

26.     In relevant part, the press release reads:

San Francisco, USA – September 5, 2017 — RhythmOne plc (LSE AIM:RTHM) today announced that that it has entered into a definitive agreement with YuMe, Inc. (NYSE: YUME) to acquire all its issued and to be issued share capital for a total consideration of approximately US $185M based on current exchange rates. The transaction is expected to close by Q1 2018.

The combination of YuMe and RhythmOne will bring together demand side and supply-side strengths in the fast growing segments of mobile, video, connected TV ("CTV") and programmatic trading. The combined marketplace is anticipated to be a top five comScore ranked marketplace that will facilitate seamless, transparent connections between thousands of advertisers and a massive supply of brand-safe inventory. The RhythmOne platform is purpose-built to meet a broad range of campaign objectives, providing turnkey solutions for both brand and performance campaigns. Furthermore, the platform will provide advertisers with a credible, scaled and independent alternative to entrenched players.

"Acquiring YuMe accelerates RhythmOne's strategy to build a unified programmatic platform with unique audiences of differentiated quality at scale," said Ted Hastings, CEO, RhythmOne. "Through YuMe, RhythmOne gains access to premium video supply including emerging, high-value connected TV inventory, unique customer insights, cross-screen targeting technology and established demand relationships. We believe this combination will give RhythmOne the resources, relationships and talent to drive value for its shareholders, and true a return on investment."

"The future of brand advertising is connected; connecting buyers to premium inventory, connecting screens to deliver unified cross-screen campaigns, connecting campaigns to brand objectives and most importantly, connecting the best technologies to each other to deliver a sum that is greater than its parts," said Paul Porrini, CEO, YuMe. "We are proud of the business we have built at YuMe, and our success in delivering innovative technologies that have helped our clients achieve their marketing goals. Together, RhythmOne and YuMe have an opportunity to transform digital advertising with an adaptive platform that connects premium demand and supply with efficiency and performance at its core."

"The combined company will have a strong financial profile providing a solid, scalable foundation upon which to accelerate growth and profitability," said Eric Singer, chairman of YuMe. "After a comprehensive review of strategic alternatives, the YuMe board concluded that the combination with RhythmOne is in the best interest of all stockholders. This combination will provide immediate scale and will

allow us to build upon the significant financial improvements underway in both companies. I look forward to serving the stockholders as chairman of the combined company upon closing and to guiding the team in realizing the combined company's mission."

**Strategic Rationale**

**A demand leader paired with a supply leader**. YuMe's strengths lie in demand-side software and services used by brands, agencies and trading platforms, a robust, first-party data management and targeting platform and global programmatic capabilities. RhythmOne's strengths are primarily focused on the supply-side as well as programmatic platform capabilities represented by its multi-channel, multi-format ad exchange, whereby advertisers and agencies can reach targeted, engaged audiences at scale.YuMe's strong relationships with agencies and brands and its demand side platform complement RhythmOne's robust, unified programmatic platform.

**The benefits of scale**. According to eMarketer, for the first time in 2016, digital advertising spend outpaced that of television. Advertisers want the value and scale from digital that they previously experienced with television. RhythmOne's acquisition of YuMe will create a combined organization with one of the largest cross-device supply footprints in the industry. By adding comScore data from the two companies, the combined entity would reach ~220M unique visitors per month. Rather than dealing with a patchwork of boutique providers, advertisers will be able to go to a single source to meet their advertising objectives.

**Comprehensive data insights**. YuMe has built a robust, first-party data management and targeting platform that provides unique insights for brand advertising campaigns. RhythmOne's analytics, data management platform and top-ranked brand safety technology provide transparency and drive results for performance-based campaigns. The unified, proprietary data set, augmented by machine-learning algorithms, will enable the combined company to successfully deliver against a broad range of advertising objectives. The data will also offer significant insight for publishers looking to derive additional value from their audiences.

**Talent**. RhythmOne and YuMe have two experienced, tenured teams that are clearly aligned within the vision for the combined company. These teams will directly benefit from operating a broader platform with greater revenue scale on a significantly stronger financial foundation.

**Accretive**. RhythmOne anticipates the transaction to be accretive in the first full year of ownership and believes that the acquisition represents an attractive opportunity to achieve savings of approximately US$10-12M per annum (before tax) across the combined businesses from functional redundancies, duplicative vendor relationships and public company costs. Furthermore, increased scale is likely to improve gross margin as a result of operating leverage and there may also be potential for revenue synergies.

**Management**

RhythmOne's CEO Ted Hastings will continue in his role as President and CEO of the combined company. Additionally, YuMe will appoint two directors to the newly constituted board of directors, one of whom will be Eric Singer, who will become the Chairman of the Board.

**Transaction details**

Under the terms of the agreement, YuMe shareholders will receive $1.70per share in cash and 7.325 shares in RhythmOne stock which equates to a total consideration of $185M.

YuMe's directors and officers and stockholders owning more than 10% of YuMe, and each of their respective affiliates, who among them hold approximately 31.6% of the issued YuMe shares, have signed tender and support agreements consenting to tender their share and not to offer, sell, grant any option to purchase or otherwise dispose of any RhythmOne shares received by them for a period of six months from closing of the transaction.

The acquisition is conditional on YuMe stockholders tendering at least a majority of the issued and outstanding YuMe shares. The acquisition is also subject to other conditions customary for transactions of this nature and requires clearance by the relevant competition authority, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. RhythmOne will register the shares offered to YuMe stockholders with the US Securities and Exchange Commission.

The boards of directors of RhythmOne and YuMe have each unanimously approved the acquisition. The transaction is expected to close by the first quarter of 2018.

## The Recommendation Statement Materially Misleads Stockholders By Omission

27.     Defendants filed the Recommendation Statement with the SEC in connection with the Proposed Transaction.  The Recommendation Statement omits material information with respect to RhythmOne's financial projections relied upon by the Company's financial advisor, Deutsche Bank, as well as the financial analyses performed by Deutsche Bank underlying its fairness opinion.  This omitted information renders the Recommendation Statement materially misleading.  If disclosed, the omitted information would significantly alter the total mix of information available to YuMe's stockholders.

28.     First, the Recommendation Statement omits all projections for RhythmOne despite the use of these projections by Deutsche Bank in performing a discounted cash flow analysis to determine the value of RhythmOne common stock.  The Recommendation Statement states that "Deutsche Bank performed a discounted cash flow analysis to determine a range of implied net present values per RhythmOne Share. Deutsche Bank applied discount rates ranging from 12.0% to 15.8% to estimates of the future unlevered free cash flows of RhythmOne for the calendar years 2017 through 2021."  But despite performing this analysis and relying on the projected unlevered free cash flows, the Recommendation Statement omits these projections.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

29.     This information is particularly crucial where a significant portion of the consideration offered to YuMe stockholders comes in the form of RhythmOne common stock, and their continued interest in the combined company relies on the cash flows of RhythmOne.

30.     The Recommendation Statement also omits material information regarding Deutsche Bank's valuation analyses.

31.     With respect to the *Discounted Cash Flow Analysis* of YuMe, for example, the Recommendation Statement omits (i) the inputs and assumptions underlying the calculation of the discount rate range of 12.0% to 15.8% used for YuMe; (ii) the range of estimated terminal values for YuMe at the end of 2021; (iii) the range of implied enterprise values for YuMe as of September 1, 2017; (iv) YuMe's stock based compensation expense; (v) YuMe's cash taxes; (vi) YuMe's capital expenditures; (vii) YuMe's change in net working capital; (viii) the inputs and assumptions underlying the calculation of the range of perpetuity growth rates of 3.0% to 5.0% used for YuMe; and (ix) YuMe's cash (net of debt).

32.     Similarly, with respect to the *Discounted Cash Flow Analysis* of RhythmOne, the Recommendation Statement omits (i) the inputs and assumptions underlying the calculation of the discount rate range of 12.0% to 15.8% used for RhythmOne; (ii) RhythmOne's unlevered free cashflows for the calendar years 2017 through 2021; (iii) the range of estimated terminal values for RhythmOne at the end of 2021; (iv) the range of implied enterprise values for RhythmOne as of September 1, 2017; (v) RhythmOne's Adjusted EBITDA; (vi) RhythmOne's stock based compensation expense; (vii) RhythmOne's cash taxes; (viii) RhythmOne's capital expenditures; (ix) RhythmOne's change in net working capital; (x) the inputs and assumptions underlying the calculation of the range of perpetuity growth rates of 3.0% to 5.0% used for RhythmOne; and (xi) RhythmOne's cash (net of debt).

33.     With respect to the *Selected Public Companies Analysis* and *Selected Transactions Analysis*, the Recommendation Statement omits the Equity Value/Last-Twelve-Month Adjusted EBITDA multiples for four of the nine selected companies and two of the nine selected transactions because those companies had either negative multiples or multiples above 15.0x, and according to Deutsche Bank, were therefore "not meaningful." These omissions leave YuMe stockholders

ignorant of whether these selectively-omitted multiples would have increased or decreased the implied fairness of the consideration offered by RhythmOne.  While Deutsche Bank may not have used these multiples in its calculations, it selected the transactions and companies as comparable and must provide the assumptions underlying the omission of these "not meaningful" multiples as well as the multiples themselves.

34.     These omissions of material fact represent selective disclosures made by Defendants in the Recommendation Statement that significantly alter the total mix of information that Defendants used to market the Proposed Transaction.  Defendants have misled investors into believing the Proposed Transaction is fair while refusing to disclose the full picture provided to the Board by its financial advisor.

35.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(d)(4) of the
Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

38.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

39.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

40.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly

had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

41.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

42.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the 1934 Act

43.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of YuMe within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of YuMe and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Recommendation Statement.

47.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)     declaring that the Recommendation Statement is materially false or misleading;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

(C)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)     directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their violations of the Exchange Act;

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff such further relief as the Court deems just and proper.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

**JURY DEMAND**

2
      Plaintiff demands a trial by jury.

3
Dated: January 9, 2018                          **LEVI & KORSINSKY, LLP**

4
                                        By: /s/ *Rosemary M. Rivas*

5                                           Rosemary M. Rivas
                                            44 Montgomery Street, Suite 650
6                                           San Francisco, CA 94104
                                            Telephone: (415) 291-2420
7                                           Facsimile: (415) 484-1294

8                                           Donald J. Enright (to be admitted *pro hac vice*)
                                            **LEVI & KORSINSKY, LLP**
9                                           1101 30th Street NW, Suite 115
                                            Washington, DC 20007
10                                          Tel: (202) 524-4290
                                            Fax: (202) 337-1567

11                                          *Attorneys for Plaintiff David Feuerborn*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, David Feuerborn , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of YuMe Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 8/31/17 | YUME | 168 | 5.405 |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this January 9, 2018, at Norman, OK.

Name: David Feuerborn

Signed: